| | | |
|---|---|---|
| SOUTHPARK MORRISON, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| FERNCROFT MORRISON LLC; CAROLINA | ) | |
| PROPERTY ACQUISITIONS, LLC; and | ) | |
| SOUTHERN PROPERTY ACQUISITIONS, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Judgment on the

Pleadings and Memorandum, (Doc. Nos. 14, 15); Defendant's Motion for Judgment on the

Pleadings and Memorandum, (Doc. Nos. 21, 22); and related pleadings.  For the reasons that

follow, Plaintiff's motion will be denied and Defendant's motion will be granted in part.

I.    BACKGROUND

A.  Procedural Background

Plaintiff Southpark Morrison, LLC (Tenant) filed this action asking the Court to enter a

declaratory judgment finding that Tenant is not in default under the Lease with Defendants

Ferncroft Morrison, LLC, Carolina Property Acquisitions, LLC, and Southern Property

Acquisitions, LLC (Landlord) and that Plaintiff's Membership Interest Assignment did not

constitute a violation of the Anti-Assignment Provision in the Lease. (Doc. No. 1: Complaint).

Tenant also requests that this Court award attorneys' fees, tax the cost of this action against

Landlord, and grant Tenant such other and further relief as the Court deems just and proper. (Id.

at 13).

Landlord filed an Answer, Affirmative Defenses, and Counterclaim to Plaintiff's

Complaint asserting three affirmative defenses: (1) that this Court lacks subject matter

jurisdiction because there is no amount at issue in excess of $75,000; (2) that due to lack of

sufficient knowledge or information to form a belief about additional yet unstated defenses

available, Landlord reserved the right to assert additional defenses after discovery; and (3) that

Landlord had a counterclaim. (Doc. No. 11 at 8). The Counterclaim raised two claims for relief:

(1) summary ejectment of Tenant pursuant to N.C. Gen. Stat. § 42-26 and damages for the fair

market rent for the Premises during the period of Tenant's unlawful occupation; and (2)

declaratory judgment pursuant to 28 U.S.C. § 2201 finding that Tenant's Membership Interest

Assignment amounted to a breach of the Lease and that Tenant no longer has the right to occupy

the Premises. (Id. at 11-12).

Tenant filed the instant Motion for Judgment on the Pleadings and Supporting

Memorandum. (Doc. Nos. 14, 15). Landlord also filed a Motion for Judgment on the Pleadings

and Supporting Memorandum, (Doc. Nos. 21, 22), and a Response to Tenant's Motion for

Judgment on the Pleadings, (Doc. No. 23). Tenant filed a Reply Brief in Support of Tenant's

Motion for Judgment on the Pleadings, (Doc. No. 24), and a Response in Opposition to

Landlord's Motion for Judgment on the Pleadings, (Doc. No. 25). With the filing of Landlord's

Reply Brief in Support of Landlord's Motion for Judgment on the Pleadings, (Doc. No. 26), this

matter is ripe for disposition.

B.  Factual Background[1]

Morrison at South Park ("Morrison") is a multi-use development located at the corner of

---

[1] The parties do not dispute any material facts. (Doc. 15: Pl. Mem. at 2; Doc. 22: Def. Mem. at 11).

Sharon Road and Colony Road in Charlotte, North Carolina that was originally developed by

Morrison-Phase I, LLC ("Developer") in 2005. (Doc. No. 1: Complaint at 2). The development

is divided into three components: (1) a commercial retail unit (the "Retail Unit"); (2) a

residential multi-family apartment unit (the "Apartment Unit"); and (3) a residential

condominium unit (the "Condo Unit"). (Id. at 3). Developer also reserved the "right to maintain

a sales and/or leasing office" advertising the Apartment Unit. (Id.). On June 6, 2007, Developer

deeded the Apartment Unit to an affiliate, Sterling Morrison Apartments, LLC. (Id.).

In 2012, Bell Partners, a private real estate company that sets up investment entities and

raises private equity to fund the acquisition of multi-family properties, expressed interest in

purchasing the Apartment Unit from Sterling Morrison Apartments. (Id. at 4). Bell Partners set

up a single entity, Bell Global Fund IV, LLC ("Bell Global," later known as Bell Apartment

Fund IV, LLC), in which equity funds were contributed. (Id.). In turn, Bell Global established a

separate member-managed limited liability company, Bell Fund IV Morrison Apartments, LLC

("Bell Fund," "Tenant"), to purchase and own the Apartment Unit at Morrison, but still retained

100% of the membership interests in Tenant as the sole managing-member of Bell Fund. (Id. at

4-5; Doc. No. 21-3: Articles of Organization of Bell Fund IV Morrison Apartments, LLC). On

March 15, 2012, Sterling Morrison Apartments sold the Apartment Unit and transferred title to

Bell Fund. (Doc. No. 1: Complaint at 5).

As part of the conditions for sale, Developer transferred to Tenant its Special Declarant

Right and entered into a long term lease agreement with Tenant. (Id. at 5-6). The Lease provided

for a ninety-nine year term and allowed Tenant to use approximately 1,747 square feet within the

Retail Unit "solely for the purpose of a leasing and management office for the multifamily

apartments located at the Property currently known as 'Morrison at Southpark' and for no other

business or purpose whatsoever." (Id. at 6). Additionally, the Lease contained an Anti-Assignment Provision entitled "Assignment and Subletting" that stipulated the following:

> **Section 17.1 Generally.** Tenant shall not assign or transfer all or any portion of its legal or equitable interest in this Lease or in the Premises, nor sublet all or any portion of the Premises, nor enter into any management or similar contract which provides for a direct or indirect transfer of operating control over the business operated in the Premises, without the prior written consent of Landlord. Any assignment, sublease, or other such transfer without Landlord's prior written consent shall be void and shall confer no rights on any other party whatsoever, and, at Landlord's election, shall constitute an Event of Default.

(Id. at 6). The Lease listed Bell Fund IV Morrison Apartments by Bell Global, "its Sole Member," as "Tenant." (Doc. No. 1-5 at 37).

In 2014, Developer sold the Retail Unit to Defendants which became the new Landlord under the Lease. (Doc. No. 1: Complaint at 8). Thereafter, Bell Global became interested in selling its membership interests in Tenant. (Id.). Although Landlord made an offer to purchase the membership interests in Tenant, Bell Global rejected Landlord's offer and ultimately accepted an offer from The Connor Group, an Ohio based real estate investment firm. (Id.). Bell Global notified Landlord that its offer was not being accepted and that the Apartment Unit was being sold to a third party. (Id. at 9). After Bell Global entered into a Membership Interest Purchase Agreement agreeing to sell Tenants' membership interests to The Connor Group, The Connor Group assigned its right to purchase the Membership Interest to a new entity, CDECRE, LLC, a Delaware limited liability company. (Id.).

Prior to finalizing the sale and assignment of Tenant's membership interests, Tenant converted from a North Carolina limited liability company to a Delaware limited liability company and changed its name to Southpark Morrison, LLC. (Id.). At Tenant's request, Landlord executed an Estoppel Certificate regarding the Apartment Unit for the benefit of Connecticut General Life Insurance Company on July 21, 2015. (Id. at 10). That same day, Bell

Global executed an Assignment and Assumption of Membership Interest ("the Membership Interest Assignment") that assigned its membership interests in Tenant to CDECRE. (Id. at 9-10). On August 5, 2015, Landlord sent Tenant a letter asserting that the Membership Interest Assignment constituted a violation of the Anti-Assignment Provision, stating that Landlord was terminating the Lease, and demanding immediate possession of the Premises. (Id. at 10-11). Tenant sought to convince Landlord that the Anti-Assignment Provision did not restrict Tenant's ability to transfer its membership interests and has remained in the Premises, while Landlord has refused to accept rent payments from Tenant. (Id. at 11; Doc. No. 11 Counterclaim at 11).

## II. STANDARD OF REVIEW

### A. Declaratory Judgment

Each party asks the Court to enter a declaratory judgment in its favor, resolving whether Bell Global's assignment of its membership interests in Tenant to CDECRE constituted a violation of the Anti-Assignment Provision of the Lease and whether Tenant is now in default under the Lease. (Doc. No. 1: Complaint at 12-13; Doc. No. 11: Counterclaim at 12). Pursuant to the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such declaration" upon the filing of an appropriate pleading. 28 U.S.C. § 2201(a) (2012).

### B. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standard as a motion to dismiss brought under Rule 12(b)(6). Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013). In examining a motion for judgment on the pleadings, a court must accept all well-pleaded factual allegations as true and should view the complaint in a light most favorable to the non-movant, drawing reasonable

inferences in its favor. <u>Mylan Labs. Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993). A court may consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings "so long as they are integral to the complaint and authentic." <u>Philips v. Pitt Cty. Mem'l Hosp.</u>, 572 F.3d 176, 180 (4th Cir. 2009); <u>see</u> <u>also</u> Fed. R. Civ. P. 10(c) ("[A]n exhibit to a pleading is part of the pleading for all purposes."). Judgment on the pleadings may be granted when the undisputed facts show that the moving party is entitled to judgment as a matter of law. <u>Bradley v. Ramsey</u> 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004) (citing Moore's Federal Practice, § 12.38 (3d ed.))

"[A] motion for judgment on the pleadings can be used to obtain a declaratory judgment where the only dispute is the proper interpretation of contractual terms." <u>Saul Holdings Ltd. P'ship v. SeraCare Life Scienes, Inc.</u>, 2014 WL 6791457 at *2 (D. Md. Nov. 25, 2014) (citing <u>Hous. Auth. Risk Retention Grp., Inc. v. Chi. Hous. Auth.</u>, 378 F.3d 596, 598 (7th Cir. 2004)); <u>see also</u> <u>A</u>.S. Abell Co. v. Balt. Typographical Union No. 12, 338 F.2d 190, 193–95 (4th Cir. 1964) (addressing motion for judgment on pleadings in the context of granting declaratory judgments on lease interpretation questions)). Because the crux of the present dispute is the interpretation of the Anti-Assignment Provision, a contractual term, each party's motion for judgment on the pleadings properly seeks a declaratory judgment.

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Landlord alleges that this Court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000. (Doc. No. 11: Answer at 8). When a plaintiff seeks non-monetary relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." <u>Francis v. Allstate Ins. Co.</u>, 709 F.3d 362, 367 (4th Cir. 2013)

(quoting Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977)). If the plaintiff's jurisdictional amount allegation is well-pleaded and made in good faith, the amount will be accepted unless it appears to a legal certainty that the amount is less than the jurisdictional amount. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-289 (1938).

Here, Tenant alleged in its Complaint that it would lose an asset worth considerably more than $75,000 if its rights were terminated under the Lease. (Doc. No. 1 at 12). Because the Lease provided for a ninety-nine year lease term with a minimum rental rate of $727.92 per month for the majority of the ninety-nine year term, the object of the litigation apparently exceeds the requisite jurisdictional amount. Therefore, the Court has subject matter jurisdiction.

B. First Claim: Declaratory Judgment

As detailed above, both parties move this Court to declare the legal rights of the parties under the Lease. Tenant asks the Court to find that the Tenant is not in default under the Lease and that the Membership Interest Assignment did not constitute a violation of the Anti-Assignment Provision. (Doc. No. 1: Complaint at 12-13). Landlord asks the Court to find that Tenant's Membership Interests Assignment amounted to a breach of the Lease and that Tenant has no further right to use and occupy the Premises. (Doc. No. 11: Counterclaim at 12).

1. Interpretation of Lease's Anti-Assignment Provision

North Carolina law governs "the interpretation, validity, performance, and enforcement of [the] Lease." (Doc. No. 1-5 at 32). The parties further contracted to a neutral interpretation of the Lease, "not strictly for or against either Landlord or Tenant." (Id. at 30). Rather, parties agreed to construe the Lease as a whole, according to its fair meaning. (Id.).

When the language of a lease is clear and unambiguous, construction is a matter of law

for a court. <u>Mecklenburg Cty. v. Simply Fashion Stores, Ltd.</u>, 704 S.E.2d 48, 53 (N.C. Ct. App. 2010) (noting that a court's only duty is to determine the legal effect of the language used and to enforce the agreement as written when lease terms are clear)). A court should construe a lease with reason and common sense, seeking to find a rational purpose in the language and provisions of a lease in accordance with the presumed intentions of the parties at the time the lease was entered into and should reject interpretations that plainly lead to injustice. <u>Wal-Mart Stores v. Ingles Markets, Inc.</u>, 581 S.E.2d 111, 115 (N.C. Ct. App. 2003). "In addition to its express terms, a contract contains all terms that are necessarily implied 'to effect the intention of the parties' and which are not in conflict with the express terms." <u>Maglione v. Aegis Family Health Ctrs.</u>, 607 S.E.2d 286, 291 (N.C. Ct. App. 2005) (quoting <u>Lane v. Scarborough</u>, 200 S.E.2d 622, 624 (N.C. 1973)).

Anti-assignment provisions, like covenants not to compete, are generally disfavored by law as restraints on alienation. <u>Rogers v. Hall</u>, 42 S.E.2d 347, 348 (N.C. 1947); <u>Phelps Staffing, LLC v. S.C. Phelps, Inc.</u>, 720 S.E.2d 785, 792 (N.C. Ct. App. 2011) (noting that covenants not to compete are disfavored by law). However, anti-assignment provisions are valid contractual provisions if both parties agree to be bound by the restraint. <u>Isbey v. Crews</u>, 284 S.E.2d 534, 536 (N.C. Ct. App. 1981). In these types of restrictive covenants, determining whether particular behavior of a party amounted to a breach turns on the scope of the covenant involved. <u>Bicycle Transit Authority, Inc. v. Bell</u>, 333 S.E.2d 299, 305 (N.C. 1985).

Here, the gravamen of Tenant's claim revolves around the proper interpretation of the Anti-Assignment Provision in the Lease, which stipulates:

> **Section 17.1 Generally.** Tenant shall not assign or transfer all or any portion of its legal or equitable interest in this Lease or in the Premises, nor sublet all or any portion of the Premises, nor enter into any management or similar contract which provides for a direct or indirect transfer of operating control over the business

> operated in the Premises, without the prior written consent of Landlord.  Any assignment, sublease, or other such transfer without Landlord's prior written consent shall be void and shall confer no rights on any other party whatsoever, and, at Landlord's election, shall constitute an Event of Default.

(Doc. No. 1-5 at 21).  Tenant asserts that the Lease does not specifically restrict the transfer of membership interests nor require that Tenant must always be owned by Bell Global. (Doc. No. 1: Answer at 7).  Tenant further points to the fact that it (Bell Fund IV Morrison Apartments, later converted to Southpark Morrison) was not even a party to the Membership Interest Assignment between Bell Global and CDECRE. (Doc. No. 15: Pl. Mem. at 3-7, 11).  This type of narrow reading of a broad provision was rejected by the North Carolina Supreme Court in Bicycle Transit Authority, Inc. v. Bell.

In that case, the dispute revolved around a covenant not to compete included in a lease between the landlord Bell et al. (defendants) and tenant Bicycle Transit Authority (plaintiff). Bicycle Transit Authority, Inc., 333 S.E.2d at 300-01.  The covenant stipulated that the landlord could not "directly or indirectly be employed by, be associated with, be under contract with, own, manage, operate, join, control or participate in the ownership, management, operation, or control of, or be connected in any manner with, any business which is a competitor" with the tenant. Id. at 301.  Subsequently, the landlord leased a portion of the building occupied by the tenant to another party with knowledge that the property would be sublet to one of the tenant's competitors. Id. at 301.  The landlord argued that the technical language of the covenant was not violated because the third party actually leased the property to the competitor and because the mere leasing of the property was not prohibited by the covenant. Id. at 303.

The North Carolina Supreme Court, however, noted that the terms of the covenant clearly demonstrated that the parties intended "a very general restriction with respect to *any acts* which would promote competition with" the tenant's business. Id. at 305 (emphasis added).  Thus, the

9

court found that the landlord's actions of controlling the opportunity for a competing business to

occupy the space and benefitting from its operation "breached both the letter and spirit of the

contract" requiring that "he not be directly or indirectly associated with, be under contract with,

or be connected in any manner with any business which is a competitor" to the tenant. Id. at 305-

06.

Similarly, the Anti-Assignment Provision in the present dispute is broad in scope.

Section 17.1 restricts Tenant from transferring or assigning "*any* portion of its *legal or equitable*

*interest*" in the Lease or Premises and from entering into "*any* management *or similar* contract

which provides for a *direct or indirect* transfer of operating control." (Doc. No. 1-5 at 21)

(emphasis added). Tenant itself admits that Section 17.1 is a multi-faceted restrictive provision

that encompasses more than a standard anti-assignment provision usually includes. (Doc. No. 15:

Pl. Mem. at 10). [2] The Court finds that Lease's expansive language shows the intention of the

parties to prohibit Tenant from making any type of assignments or transfers of interest in the

Lease or Premises without Landlord's prior consent. As detailed more fully below, the

Membership Interest Assignment ceded operational control of Tenant, and thus the Premises, to

CDECRE breaching the letter and spirit of the Lease, even though "membership interests" in

Tenant are not listed in Section 17.1 and Tenant's related entity actually executed the agreement.

---

[2] Tenant dissects Section 17.1 into three distinct prohibitions and relies on cases involving
standard anti-assignment clauses. (Doc. No. 15: Pl. Mem. at 15); See Rubenstein Bros. v. Ole of
34th St., Inc., 421 N.Y.S.2d 534, 536 (N.Y. Civ. Ct. 1979) ("[A]rticle # 11 contained the *usual*
prohibition against assignment without Landlord's prior written consent.")(emphasis added));
Ser-Bye Corp. v. C.P. & G. Markets, Inc., 179 P.2d 342, 344 (Cal. Dist. Ct. App. 1947) ("'[B]y
the terms of said lease the defendant corporation covenanted that it would not . . . assign the
leasehold estate nor sublet the leased premises in whole or in part, without the written consent of
plaintiff first obtained. . . ."); Alabama Vermiculite Corp. v. Patterson, 124 F. Supp. 441, 443
(W.D.S.C. 1954) ("It is understood and agreed that this lease agreement may not be assigned by
the Lessee except upon the written consent of Lessor.").

2. Interpretation of Membership Interests Assignment

Tenant claims that "courts have routinely held that anti-assignment provisions do not prohibit the transfer of stock or membership interests in a tenant, absent an express prohibition on an ownership transfer." (Doc. No. 15: Pl. Mem. at 14). However, as the parties agree, North Carolina courts have never confronted this issue before. (Doc. No. 22: Def. Mem. at 6; Doc. No. 24: Pl. Reply at 3). Also, the cases Plaintiff uses to support its position deal with assignments of stocks in corporations rather than transfers of membership interests in limited liability companies. Therefore, the Court must determine whether a meaningful difference exists between stocks and membership interests. For the foregoing reasons, the Court finds that the two forms of corporate ownership have meaningful differences, making case law involving shares of stock not completely applicable to case law regarding membership interests.

A limited liability company (LLC) is a statutory form of business organization that combines characteristics of business corporations and partnerships. Hamby v. Profile Prods., LLC, 652 S.E.2d 231, 235 (N.C. 2007). Membership interests are units of ownership in an LLC. See N.C. Gen. Stat. Ann. § 57D-3-01 (West 2014). Membership interests are personal property and entitle one to become a member of the LLC upon the unanimous approval of the already existing members. Id. §§ 57D-3-01(a)(2)(ii), 57D-3-03(2); 57D-5-01.

In a member-managed LLC, the management of the LLC's business is vested in the manager or managers, and members exercise some degree of control or management over the operations of the LLC, pursuant to whatever the individual LLC's operating agreement provides. Id. § 57D-3-20(a). LLC member-managers have authority comparable to corporate directors and officers combined. Hamby, 652 S.E.2d at 235. As a corporation acts through its officers and

directors, so an LLC acts through its member-managers. Id.[3]  Managers are agents of the LLC

and "may act on behalf of the LLC in the ordinary course of the LLC's business."  N.C. Gen.

Stat. Ann. § 57D-3-20(c).  In contrast, a corporation is generally treated as distinct from its

shareholders in the ordinary course of business, and shareholders do not share the same agency

relationship as a member-manager has with his LLC. Green v. Freeman, 749 S.E.2d 262, 270

(N.C. 2013).  Although both member-managers and shareholders possess ownership interests in

the respective businesses, member-managers generally exercise a greater deal of control over the

daily operations of LLCs than shareholders do over corporations.

Tenant relies on case law from other jurisdictions and secondary sources finding that

anti-assignment provisions do not prohibit the transfer of stock or ownership interests in a tenant

without an express prohibition in the lease. [4]  These cases arising from other jurisdictions have

some persuasive value but do not control the Court's decision.  Moreover, even if the cases

Tenant cites were binding, the facts of the present case are distinguishable in three meaningful

ways.  First, Tenant relies on cases involving assignors with corporations run by multiple

corporate officers sharing managerial power.  On the contrary, Tenant's LLC was owned and

---

[3] This principle directly contradicts Tenant's contention addressed above that Tenant itself
cannot be held responsible for the transfer of membership interests since Bell Global actually
assigned the membership interest. (Doc. No. 15: Pl. Mem. at 11).  A single-member, member-
managed LLC can only act through its managers.  Therefore, Bell Global acted on Tenant's
behalf in the assignment, and Tenant is responsible for the actions of its agent.
[4] See e.g. Ser-Bye Corp., 179 P.2d at 345 (noting that a landlord who enters a lease with a
corporate tenant should know that ownership interests in a corporation might be assigned to third
parties in the ordinary course of business); Alabama Vermiculite Corp., 124 F. Supp. at 445
(finding that a sale of stock did not amount to a violation of the non-assignment provision of the
contract); and see generally Joshua Stein, Assignment and Subletting Restrictions in Leases and
What They Mean in the Real World, 44 Real Property, Trust and Estate Law Journal 1, 8 (2009)
("[W]hile owners of a corporation may transfer the company's stock, this transaction does not
change the actual tenant under the lease which was, is, and remains exactly the same
corporation.).

managed by only one manager, Bell Global; all operating authority was in a single set of hands.

Therefore, Bell Global could unilaterally divest itself of management rights and make CDECRE

the new member-manager without having to seek the approval of other officers. Second, Tenant

also relies on cases involving assignments or sales of partial shares of stock to third parties.[5] In

stark contrast, Bell Global assigned its entire ownership interest to CDECRE, completely

divesting itself of managerial rights over Tenant and transferring all of its authority and

ownership of Tenant. Third, and perhaps most importantly, none of the cases Plaintiff cites

involve membership interests, which differ significantly from stocks regarding the operational

control given to the owner of a single member, member-managed LLC.

While Tenant asserts that the Membership Interest Assignment was not a "management

or similar contract" and did not transfer operating control over the Premises, (Doc. No. 15: Pl.

Mem. at 12), the language of the agreement suggests otherwise. Bell Global, the sole member

and manager of Tenant, assigned all of its "rights as a member" to CDECRE and ceased to be a

member. (Doc. No. 1-9: Assignment and Assumption of Membership Interest at 1). CDECRE

agreed to "its substitution for [Bell Global] as a member and manager of [Tenant]" and assumed

"all of the duties, responsibilities and rights and agree[d] to perform and discharge all of the

obligations of [Bell Global] in its capacity as a member of [Tenant]." (Id. at 2). Finally, Bell

Global resigned "from its position as Manager of [Tenant]." (Id.). Given the express language of

the Assignment, the Court finds that the document constitutes a "management or similar

contract."

---

[5] But see Rubenstein Bros., 421 N.Y.S.2d at 538-39 (holding that a corporate tenant's transfer of all of its stock to a third party did not breach the non-assignment provision of the lease). However, the anti-assignment clause in Rubenstein Bros. was much narrower than the Anti-Assignment Provision here. Thus, Rubenstein Bros. is inapposite.

Because of the distinct nature of membership interests and the particular corporate form

of Tenant as a single-member, member-managed LLC, the Court further finds that Bell Global

effectively transferred all of its operating authority in the Premises to CDECRE as the new

member-manager Tenant.  Through its resignation as member-manager, Bell Global can no

longer act on Tenant's behalf and, therefore, has lost "operating control" over the business

operated in the Premises.  Thus, the agreement had the effect of assigning or transferring legal

interest in the Lease and Premises to CDECRE without Landlord's prior written consent.

Accordingly, the Court declares that the assignment of membership interests to CDECRE

amounted to a breach of the Lease and Plaintiff is in default under the Lease.[6]

C.  Second Claim: Summary Ejectment

Chapter 42 of the North Carolina General Statutes establishes the statutory framework

governing evictions in North Carolina and provides that:

> Any tenant . . . who holds over and continues in possession of the demised
> premises, or any part thereof, without the permission of the landlord, and after
> demand made for its surrender, may be removed from such premises . . .  when
> the tenant . . . has done or omitted any act by which, according to the stipulations
> of the lease, his estate has ceased.

N.C. Gen. Stat. Ann. § 42-26(a).  Here, Section 17.1 of the Lease stipulates that a violation of

that section shall constitute an Event of Default. (Doc. No. 1-5 at 23).  Section 19.1 provides that

upon the occurrence of any Event of Default, Landlord has the right to terminate the Lease and

---

[6] Landlord also alleges that by converting from a North Carolina entity to a Delaware entity,
Tenant breached Section 19.1(10) of the Lease which provides for an Event of Default:
> if Tenant shall fail to remain in good standing in the state in which the Commercial
> Tract is located and/or the state of its incorporation, or shall, if a foreign corporation
> or other entity fail to qualify to transact business and/or maintain a duly registered
> agent in the state in which the Commercial Tract is located.
(Doc. No. 1-5 at 24; Doc. No. 11: Counterclaim at 9-10).  Because the Court has found that
Tenant breached the Lease, the Court need not reach this argument.

Tenant's right to possession of the Premises. (Id. at 19). Although Landlord informed Tenant on August 5, 2015, that its Lease was terminated and demanded that Tenant vacate the Premises, Tenant refuses to vacate. (Doc. No. 1: Complaint at 11). Landlord is entitled to possession of the Premises because Tenant breached Section 17.1 of the Lease; therefore, Defendant's claim for summary ejectment is granted.

### D. Damages

Landlord also seeks monetary damages for the fair market rent for the Premises during the period of Plaintiff's unlawful occupation of the Premises. (Doc. No. 11: Counterclaim at 11). However, the Court lacks sufficient information to enter a judgment calculating the amount of damages owed to Landlord for Tenant's holdover. Therefore, the Court reserves judgment on that issue and orders that, pursuant to the schedule below, the parties to submit further briefing on how damages should be calculated, including whether an evidentiary hearing is warranted.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Judgment on the Pleadings, (Doc. No. 14), is **DENIED**;

2. Defendant's Motion for Judgment on the Pleadings, (Doc. No. 21), is **GRANTED in part** and Defendant is entitled to immediate and exclusive possession of the Premises; and

3. Defendant shall submit further briefing regarding monetary damages within thirty (30) days of this Order. Plaintiff shall respond within fourteen (14) days of Defendant's filing. Defendant may file a reply within seven (7) days of the date on which the response is filed.

Signed: August 25, 2016

Robert J. Conrad, Jr.
United States District Judge